NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CYNTHIA SHAUGER,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

Civil Action No. 17-1710 (SRC)

**OPINION**

**CHESLER, District Judge**

This matter comes before the Court on the appeal by Plaintiff Cynthia Shauger ("Plaintiff") of the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled under the Social Security Act (the "Act"). This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g) and, having considered the submissions of the parties without oral argument, pursuant to L. CIV. R. 9.1(b), finds that the Commissioner's decision will be affirmed.

In brief, this appeal arises from Plaintiff's application for disability insurance benefits, alleging disability beginning June 1, 2011. A hearing was held before ALJ Marguerite Toland (the "ALJ") on May 12, 2015, and the ALJ issued an unfavorable decision on July 31, 2015, finding Plaintiff not disabled. After the Appeals Council denied Plaintiff's request for review, the ALJ's decision became the Commissioner's final decision, and Plaintiff filed this appeal.

In the decision of July 31, 2015, the ALJ made the following findings. The ALJ found that, at step three, Plaintiff did not meet or equal any of the Listings. At step four, the ALJ found

that Plaintiff retained the residual functional capacity to perform sedentary work, with certain limitations, including a limitation to low-stress work. At step four, the ALJ also found that this residual functional capacity was not sufficient to allow Plaintiff to perform her past relevant work. At step five, the ALJ consulted a vocational expert and concluded that there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ concluded that Plaintiff was not disabled within the meaning of the Act.

Plaintiff contends that the decision should be reversed on four grounds: 1) the ALJ's step two and step four determinations are inconsistent; 2) the ALJ erred in assigning little weight to the opinions of Plaintiff's treating nurse practitioner; 3) the ALJ erred in her evaluation of Plaintiff's rheumatoid arthritis; and 4) the ALJ erred in assessing Plaintiff's credibility.

As to the first point, Plaintiff argues that the residual functional capacity determination at step four does not expressly reflect all of the severe impairments found at step two. Plaintiff cites no law that states that the residual functional capacity determination is based on the severe limitations found at step two. This argument is meritless, as the legal tests at step two and at step four are wholly different. Neither the Act nor the case law supports the proposition that finding a severe impairment at step two means that such an impairment is necessarily disabling at step four. A finding of a severe impairment at step two does not relieve a claimant of the burden of proving her residual functional capacity at step four.

As to the second point, Plaintiff argues that the ALJ erred in assigning little weight to the opinions stated by nurse practitioner Moharsky-Cahn. The ALJ stated:

2

> The undersigned notes that Nurse Moharsky-Cahn is not a physician, and
> therefore not an "acceptable medical source"; and furthermore finds the GAF
> score offered by her to be less than persuasive since it is not consistent with the
> overall medical evidence, which supports a finding of mild to moderate
> limitations, and not serious limitations (SSR 06-03p).

(Tr. 28.) Plaintiff first argues that the ALJ erred in giving little weight to the GAF score, but offers no legal analysis in support. Plaintiff contends that "the ALJ failed to cite any specific evidence that contradicted the findings by APRN Moharsky-Cahn." (Pl.'s Br. 14.) Plaintiff cites no authority for the proposition that the ALJ was obligated to do so. In Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 204 (3d Cir. 2008), the Third Circuit found "no authority for the proposition that an ALJ must cite all evidence a claimant presents, including evidence that is irrelevant to her case." The case of Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004), further elucidates this point by nothing that "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather the function of *Burnett* is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." See Burnett v. Comm'r of SSA, 220 F.3d 112, 119-20 (3d Cir. 2000). The ALJ was not required to cite specific contradictory evidence and sufficiently explained her reasoning about the GAF score to permit meaningful review.

As to the substance of the ALJ's explanation about why she found the GAF score less than persuasive, this Court's review is limited to determining whether it is supported by substantial evidence. The concluding paragraph of the residual functional capacity determination summarizes the findings of the state agency medical consultants. Those findings are consistent with the ALJ's statement that the medical evidence supports a finding of mild to moderate limitations, but not serious limitations. The ALJ's decision to give the nurse

3

practitioner's GAF score little weight is supported by substantial evidence.

Next, Plaintiff challenges the ALJ's characterization of the nurse practitioner as not an "acceptable medical source." The phrase, "acceptable medical source," is a legal term of art, not a value judgment. Plaintiff does not persuade that the ALJ erred here. Consider what SSR 06-3p says on this subject:

> *Medical Source Distinction*
>
> The distinction between "acceptable medical sources" and other health care providers who are not "acceptable medical sources" is necessary for three reasons. First, we need evidence from "acceptable medical sources" to establish the existence of a medically determinable impairment. See 20 CFR 404.1513(a) and 416.913(a). Second, only "acceptable medical sources" can give us medical opinions. See 20 CFR 404.1527(a)(2) and 416.927(a)(2). Third, only "acceptable medical sources" can be considered treating sources, as defined in 20 CFR 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight. See 20 CFR 404.1527(d) and 416.927(d).
>
> Making a distinction between "acceptable medical sources" and medical sources who are not "acceptable medical sources" facilitates the application of our rules on establishing the existence of an impairment, evaluating medical opinions, and who can be considered a treating source.
>
> *"Other Sources"*
>
> In addition to evidence from "acceptable medical sources," we may use evidence from "other sources," as defined in 20 CFR 404.1513(d) and 416.913(d), to show the severity of the individual's impairment(s) and how it affects the individual's ability to function. These sources include, but are not limited to:
>
> Medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists; and
>
> "Non-medical Sources" including, but not limited to:
>
> Educational personnel, such as school teachers, counselors, early intervention team members, developmental center workers, and daycare center workers;
>
> Public and private social welfare agency personnel, rehabilitation counselors; and

> Spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, clergy, and employers.
>
> Information from these "other sources" cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an "acceptable medical source" for this purpose. However, information from such "other sources" may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.

Plaintiff fails to articulate how the ALJ's treatment of the nurse practitioner evidence is in conflict with SSR 06-3p, which clearly states that nurse practitioners do not come within the scope of the category, "acceptable medical source."

Plaintiff argues that the ALJ's explanation for the weight he gave the nurse practitioner's opinion is "insufficient," but cites no law to support this. (Pl.'s Br. 17.) As already stated, the Third Circuit, in Jones v. Barnhart, set forth a standard which requires that explanations must be sufficient "to permit meaningful review." 364 F.3d at 505. That standard has been met here: the ALJ's explanation is sufficient to permit this Court to meaningfully review it.

Plaintiff next makes several arguments with regard to the ALJ's assessment of the evidence regarding Plaintiff's rheumatoid arthritis. First, Plaintiff contends that the ALJ's findings as to diagnosis are internally inconsistent. This Court declines to pursue this wild goose chase. Plaintiff's review of the evidence makes clear that the underlying medical evidence on this point is complex and that there are conflicting findings contained within that evidence.[1]

---

[1] Here is one example. The ALJ notes that, in Dr. Toma's report dated November 28, 2012, Dr. Toma wrote, "At this time, the patient doesn't have serological or clinical criteria for lupus or other diffuse connective tissue disease." (Tr. 280.) The ALJ later notes that Dr. Haj's report dated January 23, 2015 contains diagnoses of both rheumatoid arthritis and lupus. (Tr. 376.) This does not demonstrate inconsistency or contradiction in the ALJ's analysis: these are simply accurate statements of complex medical evidence.

Plaintiff also mischaracterizes the ALJ's statements about Dr. Haj's diagnostic conclusions. The ALJ wrote: "It appears that she has a diagnosis of rheumatoid arthritis, but there are no laboratory workups to support this diagnosis (12F), even though requested by the Administrative Law Judge." (Tr. 30.) Plaintiff attempts to characterize this as an erroneous statement that is contradicted by a lab test from January of 2013, but it is clear that what the ALJ meant here is that Dr. Haj's report dated January 23, 2015 contained no laboratory tests to support his diagnostic conclusions. The record shows that the ALJ's statement about Dr. Haj's report dated January 23, 2015 is factually correct: the report cites no laboratory tests. (Tr. 375-76.) The Court finds no significant errors in this regard.

Plaintiff next argues that the ALJ failed to consider all probative evidence. Again, however, Plaintiff attempts to use the breadth and complexity of the medical evidence to show error on the part of the ALJ. Plaintiff accomplishes no more than to show that the ALJ did not cite every medical finding in the record. The ALJ is not required to list every single medical finding. Plaintiff has pointed to no significant medical finding that the ALJ overlooked.

Plaintiff's brief loses sight of the task facing an ALJ in arriving at a residual functional capacity determination at step four. The ALJ is not tasked with determining Plaintiff's correct medical diagnoses. Instead, the ALJ is tasked with determining the claimant's residual functional capacity. 20 C.F.R. § 404.1520(a)(4)(iv) ("At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.") The ALJ must muster the evidence relevant to determining the claimant's ability to function. This is different from determining the claimant's medical diagnoses. Plaintiff bears the burden of proof of residual

6

functional capacity. Plaintiff has not pointed out any significant evidence as to her residual functional capacity that the ALJ overlooked.

This issue manifests again in Plaintiff's argument that the ALJ disregarded Dr. Haj's medical opinion in favor of her own lay opinion. Plaintiff focuses on the complex medical evidence regarding her medical diagnoses. As already discussed, at step four, the ALJ is not tasked with determining the claimant's correct medical diagnoses, but with her residual functional capacity. The law does not require the Commissioner to determine the correct medical diagnoses, but instead to assess a claimant's ability to work. The bottom line is that Plaintiff does not point to any significant evidence regarding Plaintiff's residual functional capacity that the ALJ overlooked.

Lastly, Plaintiff argues that the ALJ erred in determining Plaintiff's credibility. The ALJ found that Plaintiff's statements about the limiting effects of her symptoms were not entirely credible. (Tr. 32.) Plaintiff points out a minor error the ALJ made regarding the age of Plaintiff's children. This has no significance. The ALJ's credibility determination is supported by substantial evidence.

This Court has reviewed the ALJ's decision and finds that the ALJ's decision is supported by substantial evidence. Plaintiff has failed to persuade this Court that the ALJ erred

in her decision or that she was harmed by any errors.  This Court finds that the Commissioner's decision is supported by substantial evidence and is affirmed.

                                                            s/ Stanley R. Chesler
                                                         STANLEY R. CHESLER, U.S.D.J.

Dated: October 31, 2018